UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN C. RODRIGUEZ, | No. 2: 14-cv-1049 KJN P |
| Plaintiff, | |
| v. | ORDER |
| JEFFREY BEARD, et al., | |
| Defendants. | |

Introduction

    Plaintiff is a state prisoner proceeding without counsel.  Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

    Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

    Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to make monthly

payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("a judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v.

2

Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236(1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

Plaintiff's Complaint

Named as defendants are Jeffrey Beard, Matthew Cate, Mike McDonald, Fred Foulk, R. St. Andre, D. Peddicord, W. Wilson, Kraft, Flaherty and Shelly Matis.  Plaintiff's complaint contains four claims for relief.  First, plaintiff alleges that he was denied his right to access the courts due to an inadequate law library as well as inadequate law library access.  Second, plaintiff alleges that he was retaliated against after he complained about the inadequate law library.  Third, plaintiff alleges that he was subjected to race based lockdowns.  Fourth, plaintiff alleges a claim for intentional infliction of emotional distress in violation of state law.

*Alleged Denial of Access to the Courts*

Plaintiff alleges that he was housed at High Desert State Prison ("HDSP") from March 2011 to March 2014.  On October 28, 2010, plaintiff filed a habeas corpus petition in the United States District Court for the Central District of California challenging his criminal conviction.  Plaintiff alleges that he could not prepare an adequate supplemental traverse to respondent's answer to his petition because the HDSP law library was inadequate.  Plaintiff alleges that he could not access several federal reporter cases as well as updated Supreme Court cases.  Plaintiff alleges that respondent's 59 page response to his petition cited over 65 cases, over 24 of which were not available in the law library.  Plaintiff also claims that he sought access to Shepards, but he does not indicate whether he obtained this access.  Plaintiff also alleges that he did not receive adequate time in the law library to prepare his supplemental traverse.  Plaintiff alleges that his supplemental traverse was 174 pages long.

Plaintiff alleges that on March 29, 2012, the Magistrate Judge recommended that his petition be denied.  On June 12, 2012, the Magistrate Judge issued an amended findings and recommendation, again recommending that plaintiff's petition be denied.  Plaintiff alleges that the

3

findings and recommendations cited cases that were not available in the law library. Plaintiff did not receive the amended findings and recommendations. On June 26, 2012, the district court adopted the amended findings and recommendations.

After receiving the judgment from the district court, plaintiff alleges that he attempted to prepare a request for a certificate of appealability. On July 25, 2012, plaintiff filed a notice of appeal. On July 25, 2013, the Ninth Circuit Court of Appeals denied plaintiff's request for a certificate of appealability. Because plaintiff had fourteen days to file a motion for reconsideration with the Ninth Circuit and ninety days from that date to file a petition for writ of certiorari with the Supreme Court, he immediately submitted a request for law library access as a preferred legal user ("PLU").

Plaintiff alleges that he later heard two law librarians talking about getting new computers for the library because the hard drives of the old computers were difficult to update. On January 14, 2014, plaintiff attended the law library and saw that new computers had been installed. The new computers contained unpublished and published cases, Shepards and up-to-date decisions. Plaintiff finished preparing his petition for a writ of certiorari. Plaintiff alleges that having reviewed the previously unavailable new case law, he realized that his grounds for challenging his conviction were meritorious. On March 24, 2014, the Supreme Court denied plaintiff's request for a petition for writ of certiorari without comment or citation.

Prisoners "have a constitutional right to petition the government for redress of their grievances, which includes a reasonable right of access to the courts." O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996). In Bounds v. Smith, 430 U.S. 817 (9th Cir. 1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons who are trained in the law." Bounds v. Smith, 430 U.S. at 828. To establish a violation of the right to access to the courts, however, a prisoner must allege facts sufficient to show that: (1) a nonfrivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded, and (2) he has suffered an actual injury as a result. Lewis v. Casey, 518 U.S. 343, 353–55 (1996).

1 An "actual injury" is defined as "actual prejudice with respect to contemplated or existing
2 litigation, such as the inability to meet a filing deadline or to present a claim." Id. at 348.

3       Law libraries and legal assistance programs are only means of ensuring access to the
4 courts. Id. at 351. Because inmates do not have "an abstract, freestanding right to a law library
5 or legal assistance, an inmate cannot establish relevant actual injury by establishing that his
6 prison's law library or legal assistance program is subpar in some theoretical sense." Id. The
7 inmate must demonstrate that the alleged shortcomings in the law library or legal assistance
8 program hindered his efforts to pursue a legal claim. Id. He might show, for example, that a
9 complaint he prepared was dismissed for failure to satisfy some technical requirement which,
10 because of deficiencies in the prison's legal assistance facilities, he could not have known. Id.
11 He might also show that he had suffered arguably actionable harm that he wished to bring before
12 the courts, but was so stymied by inadequacies of the law library that he was unable even to file a
13 complaint. Id.

14       Plaintiff alleges that he could not prepare an adequate supplemental traverse, objections,
15 request for certificate of appealability and request for reconsideration because the law library was
16 inadequate. Plaintiff alleges that once the law library received new computers, he discovered
17 case law demonstrating that his claims had merit. Plaintiff suggests that had he had access to
18 these cases, the District Court and Ninth Circuit would have granted his habeas corpus petition.

19       For the following reasons, the undersigned finds that plaintiff has not stated a colorable
20 claim challenging the adequacy of the law library. First, plaintiff has not demonstrated that he
21 suffered an actual injury in that was unable to *pursue* a legal claim due to the allegedly inadequate
22 law library. In other words, the alleged inadequacies of the law library did not prevent plaintiff
23 from filing his pleadings. The record reflects that plaintiff was able to litigate his federal habeas
24 petition all the way to the Supreme Court, which included filing a 174 page supplemental traverse
25 filed in the district court.

26       While plaintiff alleges that he discovered that his claims had merit only after he had
27 access to the new computers, the undersigned observes that the Supreme Court denied his petition
28 for a writ of certiorari which contained these new cases. Moreover, plaintiff had adequate law

1  library access when he filed his initial petition in the Central District before his transfer to HDSP.
2  Plaintiff does not address why he was unable to discover the cases he now claims he discovered
3  only after HDSP updated its computers even though he had adequate law library access when he
4  filed his initial petition. For these reasons, the undersigned finds that plaintiff has not
5  demonstrated that he suffered an actual injury because of the alleged inadequacies of the HDSP
6  law library.

7  Plaintiff also alleges that he did not have adequate physical access to the law library in
8  order to prepare his supplemental traverse, objections, request for certificate of appealability and
9  motion for reconsideration. Plaintiff does not specifically allege how inadequate physical access
10 to the law library hindered his ability to prepare his 174 page supplemental traverse, objections,
11 request for a certificate of appealability and motion for reconsideration. For these reasons, the
12 undersigned finds that plaintiff has not demonstrated that he suffered an actual injury as a result
13 of allegedly inadequate access to the law library.

14 For the reasons discussed above, plaintiff's claims alleging denial of access to the courts
15 are dismissed with leave to amend.

16 *Retaliation*

17 Plaintiff alleges that he was retaliated against for filing grievances regarding the
18 inadequate law library and for complaining after he discovered the real reason the computers in
19 the law library were inadequate. Plaintiff alleges that on April 4, 2011, he filed his first grievance
20 challenging the adequacy of the law library. On April 13, 2011, defendant Flaherty responded to
21 this grievance. On June 17, 2011, defendant Kraft filed a response to plaintiff's second level
22 grievance. On October 11, 2011, plaintiff's third level grievance was denied. On October 15,
23 2011, plaintiff complained to defendants Flaherty and Kraft about the allegedly inadequate law
24 library.

25 Plaintiff alleges that on May 18, 2012, he was assigned the library clerk position at the
26 law library.

27 Plaintiff alleges that on March 9, 2013, he discovered that the computers in the law library
28 were inadequate due to a problem with the hard drives. Plaintiff alleges that up until that time, he

6

had been told that the reason the computers could not be updated was due to a problem with West Group, the company responsible for the updates.

Plaintiff alleges that on April 11, 2013, defendant Matis began supervising plaintiff in his position as library clerk.  Defendant Matis was a new librarian.  On April 24, 2013, defendant Matis fired plaintiff for helping inmate Leon.  To justify the firing, defendant Matis later falsely stated that plaintiff had refused to work on six days.

Correctional Officer Gill later told plaintiff that he was fired for inappropriately speaking to a teacher, Mr. B., through the glass partition in the law library.

Plaintiff later filed an administrative grievance challenging his firing.  Plaintiff alleged that defendant Matis had wrongfully terminated him from his job.  Plaintiff alleged that defendant Matis lied on plaintiff's time card because plaintiff exercised his First Amendment rights.  Plaintiff also alleged that defendant Matis retaliated against him by not giving him law library access.

Plaintiff alleges that on April 25, 2013, and April 30, 2013, he submitted requests for law library access.  On June 8, 2013, plaintiff was called to the law library for the first time since his firing.  On June 8, 2013, plaintiff filed another request for law library access.  Plaintiff attended the law library on August 8, 2013.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

Plaintiff has not plead sufficient facts demonstrating that he was fired from his job and denied law library access because he complained about the inadequate law library.  Plaintiff's grievances regarding the law library were addressed in 2011.  Plaintiff has not plead sufficient facts demonstrating that defendant Matis, who fired him from his job in 2013, had knowledge of

7

these grievances or was otherwise motivated to retaliate against plaintiff for filing them.

Plaintiff also alleges that he was fired from his job after he discovered the "real" reason the law library computers were inadequate. However, plaintiff does not allege that he filed any grievance regarding this discovery or otherwise complained to any prison official, including defendant Matis, regarding this issue. For these reasons, the undersigned finds that plaintiff has not plead sufficient facts demonstrating that he was fired from his job and denied law library access because he complained about the "real" reason the law library computers were inadequate. Accordingly, this claim is dismissed with leave to amend.

Plaintiff may be claiming that he was fired from his job and denied law library access by defendant Matis in retaliation for his assisting inmate Leon. However, the complaint does not clearly allege this theory. If plaintiff intends to proceed on this theory of retaliation, it must be clearly set forth in the amended complaint.

*Race Based Lockdowns*

Plaintiff alleges that he is classified as a southern Hispanic. Plaintiff alleges that when he was transferred to HDSP on March 2, 2011, he was housed in Facility C, building 5, which had been on lockdown since June 10, 2010. On November 9, 2012, plaintiff was informed that all Hispanic inmates were placed on lockdown because two southern Hispanic inmates attempted to murder another inmate. Plaintiff alleges that this incident did not happen in Facility C and that he had nothing to do with this incident. This lockdown lasted until March 2013.

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 55 (1974) (citation omitted). A prison classification based on race is "immediately suspect" and is subject to strict scrutiny. Johnson v. California, 543 U.S. 499, 505–06 (2005). Like race, ethnicity and national origin are suspect classifications. Id. at 503 (holding that California's policy of temporarily segregating new inmates or transferees by race, ethnicity, and national origin for up to 60 days was an "express racial classification" triggering strict scrutiny). Strict scrutiny is required "in order to smoke out illegitimate uses of race by assuring that government is pursuing a goal important enough to warrant such a highly suspect tool." Id. at 506 (internal quotation

marks and alteration omitted).

Under Johnson, strict scrutiny means that the government must show that "reasonable men and women could not differ regarding the necessity of a racial classification in response to prison disturbances and that the racial classification was the least restrictive alternative (i.e., that any race-based policies are narrowly tailored to legitimate prison goals)." Richardson v. Runnels, 594 F.3d 666, 671 (9th Cir. 2010) (as amended) (reversing summary judgment in favor of the defendant prison officials on an African–American inmate's equal protection claim alleging that assaults "that were believed to be perpetrated or planned by prisoners who were African–American led to the lockdown of all African–American inmates in a particular unit of the prison," where there was an absence of evidence showing a link other than race between the perpetrators and the other prisoners placed on lockdown, and therefore the defendants "made no evidentiary showing at all concerning the basis for regarding all African–Americans as a security risk when one or a few African–American inmates are responsible for an assault"). Prison classifications that burden fundamental rights but are not based on race generally pass constitutional muster if they are "reasonably related" to "legitimate penological interests." See Johnson, 543 U.S. at 509–10 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Plaintiff's claim alleging improper race based lockdowns in dismissed with leave to amend so that plaintiff may clarify the time period during which he was allegedly subject to race based lockdown. It is not clear if plaintiff is alleging that he was subject to a race based lockdown from the time he arrived at HDSP in March 2011 until March 2013, or whether he is alleging that he was subject to a race based lockdown from November 2012 until March 2013.

*Intentional Infliction of Emotional Distress*

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1245 (2004); Mangold v. Cal. Pub. Utils.

9

1  Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against a public employee, a
2  plaintiff must allege compliance with the Tort Claims Act.  State v. Superior Court, 32 Cal.4th at
3  1245; Mangold, 67 F.3d at 1477; Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627
4  (9th Cir. 1988).

      Plaintiff has not alleged compliance with the Tort Claims Act as to his state law claim for intentional infliction of emotional distress.  Accordingly, this claim is dismissed with leave to amend.

Conclusion

      For the reasons discussed above, plaintiff's complaint is dismissed with leave to amend.  Plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This requirement exists because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

      Plaintiff's complaint is 36 pages long.  Federal Rule of Civil Procedure 8(a) provides that a pleading shall contain a short and plain statement of the claims.  It is clear that plaintiff can state his claims in a shorter complaint.  Therefore, if plaintiff files an amended complaint, it may be no longer than 25 pages.

      On May 19, 2014, plaintiff filed a motion to amend his complaint to correct a typographical error.  Because the complaint is dismissed with leave to amend, the motion to amend is denied as unnecessary.

      Plaintiff requests that the court appoint counsel.  District courts lack authority to require counsel to represent indigent prisoners in section 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court may request an attorney to voluntarily to represent such a plaintiff.  See 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

When determining whether "exceptional circumstances" exist, the court must consider plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel). The burden of demonstrating exceptional circumstances is on the plaintiff. Id. Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel.

Having considered the factors under Palmer, the court finds that plaintiff has failed to meet his burden of demonstrating exceptional circumstances warranting the appointment of counsel at this time.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's complaint is dismissed.

4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

    a. The completed Notice of Amendment; and

    b. An original and one copy of the Amended Complaint.

Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint." Failure to file an amended complaint in accordance with this order may result in the dismissal of this action.

////

5. Plaintiff's motion for appointment of counsel (ECF No. 6) is denied;

6. Plaintiff's motion to amend (ECF No. 7) is denied.

Dated: June 10, 2014

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Ro1049.14

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| DEAN RODRIGUEZ, | No. 2: 14-cv-1049 KJN P |
|---|---|
| Plaintiff, | |
| v. | NOTICE OF AMENDMENT |
| JEFFREY BEARD, et al., | |
| Defendants. | |

    Plaintiff hereby submits the following document in compliance with the court's order filed_____.

    _____    Amended Complaint

DATED:

    _____
    Plaintiff