1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9          FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   DEAN C. RODRIGUEZ,                     No.  2:  14-cv-1049 MCE KJN P

12              Plaintiff,

13        v.                                ORDER AND FINDINGS AND
                                            RECOMMENDATIONS
14   JEFFREY BEARD, et al.,

15              Defendants.

16

17   I.  Introduction

18        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19   to 42 U.S.C. § 1983.  Pending before the court is defendant Matis's motion for summary

20   judgment.  (ECF No. 102.)

21        Also pending is plaintiff's motion to stay this action so that he may conduct additional

22   discovery, brought pursuant to Federal Rule of Civil Procedure 56(d).  (ECF No. 108.)  On

23   October 28, 2016, the undersigned ordered that he would consider plaintiff's motion to stay after

24   defendant's summary judgment motion was fully briefed.  (ECF No. 114.)  Because the summary

25   judgment motion is fully briefed, the undersigned considers plaintiff's motion to stay and to

26   conduct additional discovery herein.

27        For the reasons stated herein, the undersigned recommends that plaintiff's motion to stay

28   be denied, and that defendant's summary judgment motion be granted.

1

1    On November 14, 2016, plaintiff filed a motion for an extension of time to file his

2    opposition to defendant's summary judgment motion.  (ECF No. 116.)   On November 21, 2016,

3    plaintiff filed a timely opposition.  (ECF No. 119.)  Good cause appearing, plaintiff's motion for

4    an extension of time is denied as unnecessary.

5    II.  Legal Standard for Summary Judgment

6    Summary judgment is appropriate when it is demonstrated that the standard set forth in

7    Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

8    movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

9    judgment as a matter of law."  Fed. R. Civ. P. 56(a).

10    Under summary judgment practice, the moving party always bears the initial

11    responsibility of informing the district court of the basis for its motion, and identifying those

12    portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

13    together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue

14    of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed.

15    R. Civ. P. 56(c)).

16    "Where the nonmoving party bears the burden of proof at trial, the moving party need

17    only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

18    Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

19    387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

20    committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

21    burden of production may rely on a showing that a party who does have the trial burden cannot

22    produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

23    should be entered, after adequate time for discovery and upon motion, against a party who fails to

24    make a showing sufficient to establish the existence of an element essential to that party's case,

25    and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

26    "[A] complete failure of proof concerning an essential element of the nonmoving party's case

27    necessarily renders all other facts immaterial."  Id. at 323.

28    ////

2

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F.

3

1    Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

2    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

3    some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

4    not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

5    trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

6            By contemporaneous notice provided on January 6, 2015 (ECF No. 31), plaintiff was

7    advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

8    Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

9    Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

10   III.  Discussion

11           Plaintiff alleges that defendant Matis retaliated against him for helping inmate Leon in the

12   law library by firing plaintiff from his law library clerk job and by denying him law library

13   access.  Plaintiff also alleges that defendant Matis retaliated against him for filing a grievance

14   regarding his job loss by denying him law library access, and access to making copies and a

15   paging system.

16           A.  Legal Standard for Retaliation

17           Allegations of retaliation against a plaintiff's First Amendment rights to speech or to

18   petition the government may support a Section 1983 claim.  See Pratt v. Rowland, 65 F.3d 802,

19   807 (9th Cir. 1995).  Within the prison context, a viable claim of First Amendment retaliation

20   entails five elements:  (1) the plaintiff engaged in protected conduct; (2) an assertion that a state

21   actor took some adverse action against the plaintiff; (3) the adverse action was "because of" the

22   plaintiff's protected conduct; (4) the adverse action "would chill or silence a person of ordinary

23   firmness from future First Amendment activities;" and (5) the action did not reasonably advance a

24   legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

25   Conduct protected by the First Amendment in the prison context has included the filing of a

26   prison grievance,  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003), giving legal assistance to

27   other inmates, Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985), and access to the courts,

28   Lewis v. Casey, 518 U.S. 343, 346 (1996).

B. Alleged Retaliation for Helping Inmate Leon

*Undisputed Facts*

In April 2013, defendant Matis worked as a Library Technical Assistant ("LTA") at High Desert State Prison ("HDSP").  (ECF No. 15 at 5, 17; ECF No. 102-7 at 1.)  In April 2013, plaintiff worked as a clerk in the law library.  (ECF No. 15 at 17; ECF No. 102-7 at 3.)

On April 24, 2013, defendant Matis reviewed a request for Priority Legal User ("PLU") status submitted by inmate Leon.[1]  (ECF No. 15 at 17; ECF No. 102-7 at 3.)  Inmate Leon requested PLU status based on an order dated April 12, 2013.  (ECF No. 15 at 17; ECF No. 102-7 at 3.)  The parties do not dispute that the order granted inmate Leon 21 days to file a response to the order.  In the PLU request form, inmate Leon wrote that his deadline for responding to the order was May 12, 2013, and requested PLU status until that date.  (ECF No. 15 at 17; ECF No. 102-7 at 3.)  When defendant Matis returned the form to inmate Leon, she calculated the filing deadline as May 3, 2013, i.e., 21 days from April 12, 2013.  (ECF No. 15 at 17; ECF No. 102-7 at 3.)

While defendant Matis considered inmate Leon's PLU status application, plaintiff told defendant Matis that she had miscalculated the PLU deadline as May 3, 2013.  Plaintiff told defendant Matis that the PLU deadline was calculated based on the date the inmate actually received the order in prison.  (ECF No. 15 at 17-18; ECF No. 102-7 at 4.)  Plaintiff told defendant Matis that because inmate Leon actually received the order on or around April 19, 2013, the originally calculated PLU deadline of May 12, 2013 was correct.  (ECF No. 15 at 17-8; ECF No. 102-7 at 4.)  Plaintiff told defendant Matis that the May 3, 2013 deadline she had written on

---

[1]  In her declaration, defendant Matis describes the difference between Priority Legal User ("PLU") status and General Legal User ("GLU") status, which the parties do not dispute:

> 5.  The CDCR classified inmates as being either priority legal users or general legal users.  A priority legal user (PLU) is an inmate who has an established court deadline in an active case being litigated by the inmate, by a statute, or by a court rule.  Under departmental policies, an inmate could receive up to the last 30 days of that period as a priority legal user.  Inmates without such established court deadlines are regarded as general legal users (GLU).

(ECF No. 102-7 at 2.)

5

1   inmate Leon's PLU form was wrong.  (ECF No. 15 at 17-18; ECF No. 102-7 at 3-4.)  After this

2   conversation, defendant Matis asked plaintiff to leave the library.  (ECF No. 15 at 18; ECF No.

3   102-7 at 4.)

4   Defendant Matis did not call plaintiff back to his job as library clerk after April 24, 2013.

5   (ECF No. 15 at 20; ECF No. 102-7 at 4.)  Following April 24, 2013, defendant Matis recorded

6   several "A" days in plaintiff's work log on the days that plaintiff had been scheduled to work.

7   (ECF No. 15 at 21; ECF No. 102-7 at 4.15.)  An "A" signifies that the inmate was absent from

8   work.  (ECF No. 102-7 at 16.)

9   *Disputed Facts*

10   The nature of the April 24, 2013 disagreement between plaintiff and defendant Matis is

11   somewhat disputed.  According to defendant Matis, the following occurred:

12   10.  On April 24, 2013, I was interviewing an inmate named Leon
13   to determine that inmate's Priority Library User status.  Leon had
     submitted a PLU request.  Leon stated on the request that he had a
     court ordered deadline of May 12, 2013.  He had based that on the
14   date he had received the order in his case.  I reviewed the order and
     found that it stated that Leon had 21 days from the date of service
15   to file written objections with the court.  The order was dated April
     12, 2013.   I therefore calculated 21 days from that date and
16   determined that Leon was entitled to PLU status until May 3, 2013.
     Accordingly, I crossed out the May 12, 2012 date that Leon had
17   written on the PLU request and wrote in May 3, 2013.

18   ****

19   12.   Rodriguez was working in the library at the time I was
     considering Leon's PLU application.  As I was speaking with Leon,
20   Rodriguez continually interrupted me and interjected his opinions
     and disagreed with my conclusions.  It was his incorrect belief that
21   Leon had 21 days from the time Leon received the order to file any
     objections.  Leon believed he had received the order approximately
22   ten days after it was dated.  Had Leon followed Rodriguez's belief,
     and submitted his objections 21 days from the date he received the
23   order, Leon's objections would have been untimely.   I stated
     Rodriguez was not correct and I repeatedly asked that he be quiet
24   and stop disagreeing with me.  Rodriguez ignored these directions
     and announced to all of the inmates then in the library that I was
25   wrong.  I then directed Rodriguez to leave the library.

26   (ECF No. 102-7 at 3-4.)

27   According to plaintiff, after he told defendant Matis that the filing deadline was calculated

28   based on the date the inmate actually received the order in prison, defendant Matis told him, "I

1   don't have proof when he got it."  (ECF No. 13 at 17.)  Plaintiff alleges that he told defendant

2   Matis that inmate Leon had just told her that he received the order on or around April 19, 2013,

3   and those days should be added to his PLU status.  (Id.)  Plaintiff alleges that defendant Matis

4   told plaintiff, "You don't get it do you?"  (Id.)  Plaintiff alleges that he then gave inmate Leon a

5   602 grievance form and told him to use it to ask the mailroom to tell him when they actually

6   handed Leon the at-issue order.  (Id.)  Defendant Matis then yelled, "What are you doing?"  (Id.)

7   Plaintiff responded, "assisting Mr. Leon and advocating for our rights."  (Id.)  Defendant Matis

8   then responded, "You don't get it to you?"  (Id.)  Inmate Leon then left for a bathroom break.

9   (Id.)

10      Plaintiff then took a CDCR Form 22 and made a written request to defendant Matis to

11  outline the new law library procedures requiring inmates to show proof of when correctional

12  officers hand them their legal mail at their cell door.  (Id.)  Defendant Matis grabbed the CDCR

13  22 form, read it, then asked plaintiff to leave.  (Id.)

14      *Discussion*

15      Plaintiff alleges that defendant Matis fired him from his job, and later denied him law

16  library access, in retaliation for him speaking up on inmate Leon's behalf with regard to the

17  calculation of inmate Leon's PLU deadline.  For the following reasons, the undersigned finds that

18  plaintiff's speech was not protected conduct, as required for a retaliation claim.[2]

19      In Rizzo v. Dawson, 778 F.2d 527, 529 (9th Cir.1985), the Ninth Circuit  held that "a

20  'jailhouse lawyer' assisting other inmates with habeas petitions and other federal actions" was

21  engaging in expressive association under the First Amendment.  "Rizzo provided his legal

22  assistance during a prison-vocational course; thus, [the Ninth Circuit] held that he could viably

23  allege that his forced transfer out of the course had been in retaliation for his exercise of the

24  constitutional right to associate."  Blaisdell v. Frappiea, 729 F.3d 1237, 1245 (9th Cir. 2013.)  In

25  the instant case, it is undisputed that plaintiff made the comments that led to his removal from his

26  job in his capacity as a law library clerk.  In other words, plaintiff was not functioning as a

27  _____

28  [2]  Plaintiff does not have a constitutionally protected liberty interest in a prison job.  See
    Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 845 (9th Cir. 1985).

1  jailhouse lawyer.  In fact, plaintiff's job description prohibited from answering questions of a

2  "professional nature."  (See ECF No. 15 at 106.)  Because plaintiff did not engage in the kind of

3  activity which Rizzo held was protected, that case is not controlling here.

4       In Watkins v. Kasper, 599 F.3d 791 (9th Cir. 2010), the Seventh Circuit found no

5  protected conduct where a prison law clerk "openly challeng[ed] [the law librarian's] directives in

6  front of other prisoner law clerks," thereby "imped[ing] her authority and her ability to implement

7  library policy."  Watkins, 599 F.3d at 797; cf. Smith v. Mosley, 535 F.3d 1270, 1277 (11th Cir.

8  2008) (finding that "false and insubordinate remarks fell within the rules' proscriptions and,

9  accordingly, were not protected.")  These decisions comport with the Supreme Court holding that

10  "an inmate retains those First Amendment rights that are not inconsistent with his status as a

11  prisoner or with the legitimate penological objectives of the corrections system."  Pell v.

12  Procunier, 417 U.S. 817, 822 (1974).

13       For the following reasons, the undersigned finds that plaintiff's speech in the law library

14  on April 24, 2013 was not protected conduct.  Plaintiff "openly challenged" defendant Matis's

15  directives regarding the calculation of inmate Leon's PLU date in front of inmate Leon.

16  Plaintiff's comments to defendant Matis were insubordinate.   For example, in his declaration

17  attached to the second amended complaint, inmate Leon states that after defendant Matis

18  allegedly told plaintiff that she did not know when inmate Leon received the court order, plaintiff

19  stated, "Mr. Leon just told you when he got it, are you calling him a liar?"  (ECF No. 15 at 84.)

20       Another example of insubordinate comments made by plaintiff in front of other inmates is

21  contained in the declaration of inmate Uruiza, attached to the second amended complaint.  (Id. at

22  115-16.)  Inmate Uriaza states that he saw plaintiff give inmate Leon a 602 form, telling inmate

23  Leon that he would have to "602" the mailroom for getting his mail late, because the law librarian

24  did not want to give him PLU status.  (Id. at 115.)  Defendant Matis then told plaintiff not to give

25  advice because he was not a lawyer.  (Id.)  "In reply, [plaintiff] told [defendant Matis] that he felt

26  that person's rights were being violated:  'I'm an advocate for prisoner's rights.'"  (Id.)

27       For the reasons discussed above, the undersigned finds that plaintiff's comments were not

28  protected speech.  Accordingly, defendant Matis should be granted summary judgment as to

1  plaintiff's claim that she retaliated against him for "helping" inmate Leon in the law library.[3]

2         Defendant Matis also moves for summary judgment as to this retaliation claim on grounds

3  that plaintiff did not suffer an adverse action.  Defendant Matis argues that she did not remove

4  plaintiff from his job, but only recommended that he be considered for a different job assignment.

5  Because plaintiff did not engage in protected conduct, the undersigned need not reach this

6  argument. [4]

7

_____

8  [3]  It appears that both plaintiff and defendant Matis miscalculated the filing deadline for inmate
   Leon.  In his declaration attached to the second amended complaint, inmate Leon states that the
9  at-issue order came from the Eastern District of California.  (ECF No. 15 at 83.)  Although
   neither party identifies the case, it appears that inmate Leon sought PLU status in Leon v. Barnes,
10 2: 12-cv-2559 JAM KJN P.  On April 12, 2013, the undersigned signed findings and
   recommendations in 12-2559 stating that objections were due "within twenty-one days after being
11 served with these findings and recommendations."  (12-2559, ECF No. 13 at 6.)  Defendant Matis
   was correct that the reference to the date the finding and recommendations were served on inmate
12 Leon meant the date they were served on inmate Leon by the court, not the date he received them
   at the prison.  However, these findings and recommendations were actually filed on April 15,
13 2013, and therefore served on inmate Leon on that date, i.e., not the date they were signed, as
   found by defendant Matis.  Therefore, inmate Leon had 21 days from April 15, 2013, plus 3
14 additional days because of service by mail, to file objections to the findings and
   recommendations.  See Fed. R. Civ. P. 6(d).  Thus, inmate Leon's objections were due on May 9,
15 2013.  However, even if defendant Matis miscalculated the date inmate Leon's objections were
   due, plaintiff's speech in the law library was still not protected conduct for purposes of his
16 retaliation claim.
17

18 [4]  In her declaration, defendant Matis states that on or about April 24, 2013, she prepared a work
   supervisor report regarding plaintiff, "taking account of his poor behavior on that day."  (ECF No.
19 102-7 at 4.)  "Among other things, I noted that he had demonstrated unsatisfactory attitude toward
   supervision as well as an unsatisfactory quality of work."  (Id.)  On May 8, 2013, defendant Matis
20 wrote a disciplinary chrono regarding the events of April 24, 2013, and plaintiff's "unsatisfactory
   performance on that day."  (Id.)  On May 8, 2013, defendant Matis also wrote a general chrono in
21 which she discussed the disciplinary chrono.  (Id.)  She wrote that plaintiff had demonstrated an
   inability to perform the duties of a library clerk.  (Id.)  For that reason, defendant Matis "asked
22 that he be scheduled for a program review" and "recommended that he be given a different job
   assignment."  (Id.)
23
         An adverse action is an action that "would chill or silence a person of ordinary firmness
24 from future First Amendment activities…"  Rhodes v. Robinson, 408 F.3d  at 567-68.  Although
   defendant Matis only recommended that plaintiff receive a different job, this recommendation
25 was based on the disciplinary chrono discussing plaintiff's unsatisfactory performance on April
   24, 2013.  Had the undersigned found that plaintiff engaged in protected speech, the undersigned
26 would have found that defendant's recommendation of plaintiff for a different job based on the
   disciplinary chrono constituted an adverse action.
27

28

C. <u>Alleged Retaliation for Filing of Grievance</u>

Plaintiff alleges that on May 13, 2013, he submitted a grievance alleging that defendant Matis wrongfully fired him from his library clerk job based on his assistance to inmate Leon. (ECF No. 15 at 21.)  Plaintiff alleges that in retaliation for the filing of this grievance, defendant Matis denied him law library access on several occasions, and denied his requests for copies and access to a paging system.

Plaintiff also alleges that defendant Matis denied him law library access between April 24, 2013, and May 13, 2013, i.e., the date he filed his grievance.  Because these alleged incidents occurred before he filed the grievance, they cannot be the basis for the instant retaliation claim. Accordingly, the undersigned addresses only the allegations of alleged retaliation occurring after plaintiff filed his grievance on May 13, 2013.

*Requests for Library Access from May 13, 2013 through July 2013*

Plaintiff alleges that he submitted a request for law library access on May 28, 2013, but received no response.  (ECF No. 15 at 21.)  Plaintiff alleges that on June 8, 2013, he was called to the law library.  (<u>Id.</u> at 22.)   Plaintiff alleges that on June 8, 2013, he told defendant Matis that the case he wanted to read was not available on the computer.  (<u>Id.</u>)  Defendant Matis allegedly told plaintiff that she would print the case out and allow him to read it in the law library.  (<u>Id.</u>) Plaintiff alleges that defendant Matis gave him the case four minutes before the law library session ended, at which time she requested the case back.  (<u>Id.</u>)  Plaintiff alleges that he submitted another request for law library access on June 8, 2013, but received no response.  (<u>Id.</u>)

Defendant Matis argues that plaintiff was not wrongly denied law library access during this time frame.  The undersigned quotes herein, in relevant part, from defendant Matis's declaration:

> 6. Inmates with PLU status may receive, if warranted, four hours of library time per week.  The ability of inmates with GLU status to obtain law library access is dependent on available resources, custody personnel, and the requirements of custodial security.  The number of inmates seeking to access the Facility C law library varied from month to month, but was typically in the range of 150 to 200.   This number would go up when library closures or modified programs resulted in backlogs of inmates wishing to obtain access.  Of the inmates seeking access to the law library,

three or four per session would generally be PLU inmates.

7.   When an inmate wished to attend the law library, he could submit a law library access request form.  These requests were not "granted" or "denied."  Instead, the requests that had been received would be retained in the law library where they would be placed into a file in the order they had been received.

8.   Under the Department Operations Manual, when an inmate in the general population wished to access the law library, he was to complete a Law Library Request Form and submit it to the law library by giving it to his building floor officer who would then take all completed forms to the program office for placement in the law library mail slot or give them directly to the staff in the library.  The library staff would pick up all completed Law Library Access Request Forms from the program office on a daily basis.

****

20.   On May 10, 2013, another law library access request form was received from Rodriguez.  He was a general legal user at this time.  Attached hereto as Exhibit "H" is a true and correct copy of this law library access request form, I received from Rodriguez.  This record was received, made and kept in the ordinary course of my employment with the CDCR.

2[0].   The same day that Rodriguez submitted his request to access the law library on May 10, 2013, custody staff in Facility C discovered that a medical appliance was missing.  Therefore, all inmates housed on Facility C were placed into a modified program in order to facilitate a search for the missing equipment and investigate the matter.  As a result, only inmates with PLU status were permitted access to the law library.  This remained the case until the modified program ended on May 28, 2013.  This modified program actually overlapped an earlier modified program that had been in place after information had been received that black inmates housed on Facility C were going to assault staff.  As a result of that earlier modified program, lasting from April 20 until May 23, 2013, the only black inmates who were permitted access to the law library were those holding PLU status.

21.   Because of the number of inmates wishing to access the library as general library users, and because of Rodriguez's status as a general library user, there was not an opportunity to call Rodriguez to the library before the implementation of the modified program [and this] meant that Rodriguez could not be called.  Furthermore, after Rodriguez submitted his request on May 4, 2013, there were only two days in which any inmates visited the Facility C law library before the modified program was put into place.

22.   On May 29, 2013, the day after the modified program ended, Rodriguez submitted another request to access the law library.  He was still a general legal user.  Attached hereto as Exhibit "I" is a true and correct copy of Rodriguez's request that I received.  This record was received, made and kept in the ordinary course of my

employment with the CDCR.

23.  The modified program on Facility C that affected all inmates, as well as the earlier overlapping one that had applied only to black inmates, had created a substantial backlog of general library users in that Facility who wished to access the law library but could not until after the modified program was lifted.  Because of this backlog, Rodriguez was not able to visit the library again until June 8, 2013.

24.  It is my understanding that Rodriguez alleges that on June 8, 2013, he asked me for a copy of a case that he could not access and that I did not provide the case to him until only a few minutes before his session in the library ended.  I have no recollection of this event.  Had Rodriguez requested a case from me, I would have seen that it was provided to him as soon as possible given my need to also attend to the other inmates in the law library.

25.  Rodriguez submitted another law library access request form on June 8, 2013.  He was a general legal user at this time.  Attached hereto as Exhibit "J" is a true and correct copy of this library access request form I received from Rodriguez.  This record was received, made and kept in the ordinary course of my employment with the CDCR.

26.  At the time Rodriguez submitted his request to access the library on June 8, 2013, we were still working our way through the backlog of general users that had resulted from the modified program.  Furthermore, due to regular days when the library was closed, as well as holidays, staff training and meetings, the Facility C law library was only open for nine additional days in June 2013 and only 16 days in July 2013.  Furthermore, Facility C was again placed on a modified program on July 10, 2013 due to a missing pan and lid.  That modified program lasted until July 22, 2013.  During that time, once again, only inmates with PLU status were permitted access to the library.  As a consequence, it was not possible to again call Rodriguez to the library at that time.

(ECF No. 102-7 at 2-7.)

In the opposition to defendant's summary judgment motion, plaintiff states that he cannot oppose the portion of defendant's motion arguing that she did not retaliate against him by denying him law library access from April through November 2013 unless he is allowed to complete the limited discovery sought in the pending motion to stay.  (ECF No. 119 at 8-9.)  For the reasons stated herein, the undersigned recommends that plaintiff's motion to stay be denied as it pertains to the at-issue claim.

////

////

Federal Rule of Civil Procedure 56(d) provides that,

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may,
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Where a plaintiff has not been diligent in seeking discovery, the court should deny a request for further discovery under Rule 56(d).  See, e.g., Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995).  "When a party requests a Rule 56[d] continuance after the discovery completion date prescribed in a Rule 16 scheduling order, that party must also demonstrate 'good cause' exists under Rule 16(b) to conduct further discovery." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992).

In the motion to stay, plaintiff contends that in the summary judgment motion, defendant Matis argues for the first time that plaintiff did not have law library access from April 24, 2013, through December 7, 2013, due to lockdowns, modified programs, the large number of inmates requesting law library access, and defendant having to work at two facilities at HDSP.  (ECF No. 108 at 5.)  Plaintiff requests that he be allowed to conduct limited discovery because defendant Matis "took a different" position regarding why plaintiff was denied law library access in her response to plaintiff's request for admissions.  (Id. at 6.)  Plaintiff requests that he be allowed to conduct limited discovery as to defendant Matis's "latest claim" regarding the reasons why plaintiff was not allowed law library access.  (Id. at 7.)

Plaintiff's claim that defendant Matis takes a different position in her summary judgment motion as to why plaintiff was denied law library access is not supported by the record.  As noted by defendant, she has always denied liability.  In addition, the only written discovery propounded by plaintiff in this case was a request for admissions.  (ECF No. 110-1 at 1.)  The requests for admissions did not address the reasons why plaintiff was denied law library access from April 23,

1  2014, through December 7, 2013.  (See ECF No. 91 at 27-37.)   Plaintiff had the opportunity to

2  serve defendant Matis with timely discovery requests addressing her position regarding why

3  plaintiff did not receive law library access but failed to do so.

4       The undersigned also observes that plaintiff has attached as an exhibit to his second

5  amended complaint minutes from the C Facility IMAC Executive Committee Meeting.  (ECF No.

6  15 at 121-22.)  These minutes are from a meeting which occurred on August 31, 2013, and are

7  signed by defendant Matis, who is listed as an attendee.  (Id. at 121.)  The minutes also list

8  "Rodriguez" as attending, although it is not clear whether this "Rodriguez" was plaintiff.  (Id.)  In

9  any event, the minutes summarize a discussion regarding limited law library access for inmates

10  with GLU status.  (Id.)  The minutes set forth the reasons for limited law library access for GLU

11  status inmates:   1) small size of the library; 2) the library is open limited hours; 3) the number of

12  PLU status inmates; 4) yard schedules.  (Id.)  The minutes also state, "Ms. Matis stated that at this

13  time the backlog of GLU inmates in even numbered buildings has largely been cleared," which is

14  an apparent reference to the backlog caused by the lockdowns and modified programs.  (Id.)  The

15  reasons stated in these minutes for limited law library access for GLU inmates are consistent with

16  the position taken by defendant Matis in the summary judgment motion regarding plaintiff's

17  limited law library access.

18       For the reasons discussed above, the undersigned finds that plaintiff was not diligent in

19  seeking discovery regarding these issues.  Because plaintiff has not shown good cause to reopen

20  discovery, the motion to stay, pursuant to Rule 56(d), should be denied.

21       With the denial of plaintiff's motion to stay, defendant's motion for summary judgment as

22  to plaintiff's claim that he was denied law library access from May 13, 2013, through July 2013,

23  in retaliation for filing his inmate grievance is unopposed.  Defendant has demonstrated that

24  plaintiff's failure to receive all the library access requested during this time was caused by the

25  backlog of inmates with GLU status seeking law library access due to the modified programs,

26  holidays, staff training, meetings and regular days the library was not closed.  There is no

27  evidence that defendant Matis denied plaintiff law library access during this time period for

28  retaliatory reasons.

1    Plaintiff also alleges that when he had law library access on June 8, 2013, defendant Matis

2  printed a case for him but only allowed him four minutes to read it before the law library closed.

3  Plaintiff argues that defendant Matis granted him limited access to this printed case in retaliation

4  for his filing of the inmate grievance.  As discussed above, defendant Matis does not remember

5  this incident.  Assuming this incident occurred as alleged by plaintiff, the undersigned does not

6  find that it constitutes an adverse action as it caused, at best, de minimis harm.  See Morris v.

7  Green, 2016 WL 4044930 at * 4 (E.D. Cal. 2016) ("When adverse acts cause only de minimis

8  harm, they are insufficient to support a § 1983 claim for retaliation.").  Accordingly, defendant

9  Matis should be granted summary judgment as to this claim.

10    *Request for Law Library Access in August 2013 Regarding Ninth Circuit Order*

11    Plaintiff alleges that defendant Matis denied him adequate law library access regarding an

12  order he received from the Ninth Circuit Court of Appeals in retaliation for filing the grievance

13  challenging the loss of his library clerk job.  The facts regarding this claim are mostly undisputed.

14    It is undisputed that on August 1, 2013, plaintiff submitted a PLU request.  (ECF No. 119-

15  2 at 15.)  It is undisputed that plaintiff stated in the request that he had a court deadline of August

16  8, 2013.  (Id.)  It is undisputed that the Ninth Circuit had denied his request for a certificate of

17  appealability.  (Id.)  It is undisputed that plaintiff was seeking to file a Petition for Rehearing

18  under Rule 40 of the Federal Rules of Appellate Procedure.  (Id.)  It is undisputed that defendant

19  Matis granted plaintiff's request for PLU status on August 3, 2013, and gave plaintiff PLU status

20  until August 8, 2013, as he had requested.  (Id.)

21    The parties do not dispute that defendant Matis called plaintiff to the law library, but

22  dispute whether plaintiff attended the law library on either August 6, 2013, or August 8, 2013.

23  (See ECF No. 102-3 at 15; ECF No. 15 at 24.)

24    It is undisputed that on August 6, 2013, while plaintiff still had PLU status, he submitted

25  another PLU request.  (ECF No. 119-2 at 16.)  It is undisputed that plaintiff stated that he now

26  had a court deadline of October 25, 2013.  (Id.)  It is undisputed that, based on the same denial of

27  his request for certificate of appealability, plaintiff was seeking to file a petition for writ of

28  certiorari with the United States Supreme Court.  (Id.)  It is undisputed that defendant Matis

15

1    denied this request because plaintiff's deadline for filing the petition for writ of certiorari was

2    dependent on the Ninth Circuit first denying the petition for rehearing.  (See ECF No. 102-7 at

3    40.)  In his opposition, plaintiff argues that defendant Matis's reason for denying this PLU request

4    was "specious."  (ECF No. 119-1 at 6.)  However, it is undisputed that defendant Matis informed

5    plaintiff that, if and when the Ninth Circuit denied his petition, PLU status would be granted so

6    that he could file a petition for writ of certiorari.  (ECF No. 110-2 at 16.)

7         It is undisputed that on August 6, 2013, plaintiff submitted another request for PLU status.

8    (ECF No. 119-2 at 16.)  It is undisputed that in this request, plaintiff sought additional law library

9    access to prepare his petition for rehearing to the Ninth Circuit due on August 8, 2013.  (ECF No.

10   102-7 at 43.)  In her declaration, defendant Matis states that although plaintiff had PLU status

11   until August 8, 2013, the law library was closed on both August 7 and August 8, 2013, due to

12   training and shortage of staff.  (ECF No. 102-7 at 8.)  Defendant Matis states that once the library

13   was open again, plaintiff's PLU status had expired and his court deadline had passed.  (Id.)

14        In his opposition, plaintiff states that he cannot admit or deny defendant Matis's

15   statements in her declaration regarding his second request for PLU status submitted on August 6,

16   2013.  (ECF No. 119-2 at 17.)  Plaintiff alleges that in his pending request for a stay in order to

17   conduct additional discovery, he is seeking leave to obtain additional discovery regarding why

18   this second request for PLU status submitted on August 6, 2013, was not granted.  (Id.)  As

19   discussed above, plaintiff had adequate opportunity to submit discovery requests to defendant

20   Matis regarding his law library access.  Plaintiff has not shown good cause to reopen discovery

21   regarding his second request for PLU status submitted on August 6, 2013.  The request to reopen

22   discovery as to this claim should be denied.  Accordingly, the undersigned finds that defendant's

23   statements regarding plaintiff's second request for PLU status submitted on August 6, 2013, are

24   undisputed.

25        It is undisputed that on August 9, 2013, instead of filing a petition for panel rehearing with

26   the Ninth Circuit, plaintiff instead filed a motion for an extension of time to do so.  (ECF No.

27   119-2 at 17.)  It is undisputed that on September 3, 2013, plaintiff filed a motion for

28   reconsideration of the denial of his request for certificate of appealability with the Ninth Circuit.

1    (Id.)  It is undisputed that on September 4, 2013, the Ninth Circuit denied that motion.  (Id.)

2         For the following reasons, the undersigned finds that there is no evidence that defendant

3 Matis acted with a retaliatory motive with respect to any of the PLU requests submitted by

4 plaintiff in August 2013 regarding the at-issue Ninth Circuit order.

5         It is undisputed that defendant Matis granted plaintiff's first request for PLU status

6 regarding the Ninth Circuit order until August 8, 2013, i.e., the filing deadline.  It is undisputed

7 that plaintiff's second request for PLU status, filed August 6, 2013, was not granted because the

8 law library was closed on August 7 and August 8, 2013.  In other words, defendant Matis did not

9 deny this request based on a retaliatory motive.

10         It is undisputed that defendant Matis denied plaintiff's request for PLU status to prepare

11 his petition for writ of certiorari because it was not yet due as the Ninth Circuit had not denied

12 plaintiff's petition for rehearing.  While plaintiff describes this reason as "specious," the

13 undersigned finds this reason to be legitimate.  Defendant Matis did not deny this request for PLU

14 status based on a retaliatory motive.

15         Because there is no evidence that defendant Matis acted with a retaliatory motive when

16 processing plaintiff's August 2013 PLU requests regarding the Ninth Circuit order, defendant

17 Matis should be granted summary judgment as to this claim.

18         *Requests for Law Library Access from August through September 2013*

19         In the second amended complaint, plaintiff alleges that defendant Matis denied him law

20 library access in October and November 2013 in retaliation for filing the grievance challenging

21 the loss of his library clerk job.  Plaintiff alleges that on October 4, 10 and 24, 2013, and

22 November 5 and 14, 2013, he heard inmate Garcia called to the law library as a GLU by

23 defendant Matis, but not plaintiff "despite all his efforts and submissions of LLAR forms."  (ECF

24 No. 15 at 26.)

25         In the summary judgment motion, defendant states that plaintiff claims that he gave his

26 requests for law library access to other inmates to deliver to defendant Matis from August through

27 November 2014.  (ECF No. 102-2 at 23.)  It appears that defendant Matis is relying on plaintiff's

28 deposition testimony for this characterization of plaintiff's claim.  At his deposition, plaintiff

1   testified that after August 8, 2013, he gave two requests for law library access to inmate Garcia to

2   personally deliver to defendant Matis in August 2013.  (Plaintiff's deposition at 52.)  Plaintiff

3   testified that inmate Garcia was getting law library access in August 2013, unlike plaintiff.  (Id.)

4   Plaintiff testified that he received no response to the law library requests delivered by inmate

5   Garcia.  (Id.)

6       Plaintiff testified that after the two requests delivered by inmate Garcia in August 2013, he

7   submitted two more requests for law library access on September 14, 2013, and September 28,

8   2013, through inmate Garcia.  (Id. at 53.)  Plaintiff received no response to these requests.  (Id.)

9       Plaintiff testified that he submitted law library access requests on October 4, 2013,

10  October 10, 2013, and October 24, 2013, through inmate Garcia.  (Id. at 54).  Plaintiff received no

11  response to these requests.  (Id.)  Plaintiff testified that he made requests for law library access

12  on November 5, 2014, and November 14, 2014, through inmate Garcia.  (Id. at 55.)  Plaintiff

13  testified that he received no response to these requests.  (Id.)

14      Plaintiff testified that he did not keep copies of any of the law library requests described

15  above because the photocopy machine was in the library.  (Id. at 55.)

16      Defendant first moves for summary judgment as to plaintiff's claim alleging that

17  defendant Matis denied him law library access from August through November 2013 in

18  retaliation for filing a grievance on grounds that there is no evidence that plaintiff actually

19  submitted the large number of requests alleged.  (ECF No. 102-2 at 23.)  In her declaration,

20  defendant Matis states,

21          It is my understanding that Rodriguez claims that he submitted a
            number of requests to access the law library in August through
22          November 2013.  It is my understanding that he claims to have
            given these requests to other inmates to submit on his behalf.  I
23          have no recollection of this or having received any requests during
            that time period beyond those mentioned above.  My review of the
24          pertinent records from that time period does not indicate that any
            other requests from him for library access were received.
25

26  (ECF No. 102-7 at 9.)

27      Defendant also argues that by allegedly submitting his requests through another inmate,

28  plaintiff did not follow the procedures for requesting law library access contained in the

18

1    Department Operations Manual.  According to defendant Matis,

> Under the Department Operations Manual, when an inmate in the
> general population wished to access the law library, he was to
> complete a Law Library Access Request Form and submit it to the
> law library by giving it to his building floor officer who would then
> take all completed forms to the program office for placement in the
> library mail slot or give them directly to the staff in the library. The
> library staff would pick up all completed Law Library Access
> Request Forms from the program office on a daily basis.

(Id. at 3.)

Based on defendant's statement in her declaration that she has no recollection of the requests for law library access plaintiff alleges he submitted in August through November 2013, and the lack of records of these requests, the undersigned finds that defendant has borne her initial burden of demonstrating that there is no genuine issue of material fact with respect to whether plaintiff actually submitted the law library access requests as alleged.  The burden shifts to plaintiff to establish that a genuine issue of fact exists as to whether he submitted the law library access requests, as alleged.  For the following reasons, the undersigned finds that plaintiff has not met his burden.

In his opposition, plaintiff requests that he be allowed to conduct additional discovery in order to obtain information regarding whether records exist of the requests he allegedly submitted through inmate Garcia.  (ECF No. 1192 at 18.)  The undersigned finds that plaintiff was not diligent in seeking discovery regarding this claim as he could have sought discovery regarding this issue during the discovery phase of this action.  Because plaintiff has not shown good cause to reopen discovery, the motion to stay as it pertains to this issue should be denied.

Turning to the merits of plaintiff's argument, in his opposition plaintiff disputes defendant's claim that requests for law library access could only be submitted to a floor officer who would then deliver them to the library.  In his declaration, plaintiff states that law library request forms could also be submitted directly to the law library, which plaintiff claims inmate Garcia did on his behalf.  (ECF No. 119-1 at 2)  However, plaintiff has provided no evidence that inmate Garcia actually delivered any of the requests alleged.  Plaintiff provides no declaration from inmate Garcia, or any other evidence, addressing this issue.

1    As discussed above, all reasonable inferences that may be drawn from the facts must be

2    drawn in favor of the opposing party.  Matsushita, 475 U.S. at 587.  However, given all of the

3    other things that could have occurred after plaintiff allegedly gave the law library request forms to

4    inmate Garcia, it is not reasonable to infer from the record that inmate Garcia successfully

5    delivered the forms to the law library and that they were received by defendant Matis.  Had

6    plaintiff given the forms to his floor officer to deliver, or dropped them off at the law library

7    himself, it would have been reasonable to infer that the forms were actually delivered to

8    defendant Matis.

9    Plaintiff also alleges that he received regular law library access in December 2013 and

10   January 2014 from LTA Neubuerger, when defendant Matis was not working at the law library.

11   Defendant addresses these allegations as a separate claim.  The undersigned finds these

12   allegations relevant to the instant claim and addresses them herein.

13   A chronology of events from which retaliation can be inferred provides circumstantial

14   evidence of retaliation.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (stating that "timing

15   can properly be considered as circumstantial evidence of retaliatory intent").  For the reasons

16   stated herein, the undersigned does not find that plaintiff's law library access in December 2013

17   and January 2014 is evidence of defendant Matis's alleged retaliation and denial of law library

18   access to plaintiff in August through November 2013.

19   It is undisputed that defendant Matis did not work in the law library in Facility C, where

20   plaintiff was housed, from December 7, 2013, through January 21, 2014.  (ECF No. 119-2 at 19-

21   20.)  It is undisputed that LTA Neubuerger worked in the Facility C law library during this time

22   period.  (Id. at 20.)  It is undisputed that plaintiff received law library access on December 27,

23   2013, January 7, 2014, January 11, 2014, and January 18, 2014.  (Id. at 20-21.)  It is undisputed

24   that plaintiff had PLU status from December 18, 2013, to February 6, 2014.  (Id. at 20.)  It is

25   undisputed that defendant Matis called plaintiff to the library on January 24, 2014, and January

26   30, 2014.  (Id. at 22-23.)

27   It is not reasonable to infer from plaintiff's receipt of law library access in December and

28   January 2014 that inmate Garcia actually delivered plaintiff's law library request forms in August

20

1   through November 2013, as alleged, and that defendant Matis disregarded these requests.  At his

2   deposition, plaintiff testified that he, himself, delivered his request for law library access to the

3   law library on December 2, 2013.  (Plaintiff's deposition at p. 56.)  Plaintiff testified that he made

4   his next several requests for law library access as he left the library, i.e, he delivered the requests

5   himself.  (Id. at pp. 58-59.)  It is also undisputed that defendant Matis called him to the library

6   twice in January 2014.  From these circumstances, it is not reasonable to infer that defendant

7   Matis received the requests for law library access plaintiff claims he gave to inmate Garcia in

8   August through November 2013 to deliver on his behalf.  In other words, plaintiff's receipt of law

9   library access in December 2013 and January 2014 is not circumstantial evidence of the

10   retaliation alleged.

11   Accordingly, for the reasons discussed above, the undersigned finds that plaintiff has not

12   met his burden of opposing defendant's evidence demonstrating that she did not receive the law

13   library request forms plaintiff alleges he submitted through inmate Garcia in August through

14   November 2013.  Because the unopposed evidence demonstrates that defendant Matis did not

15   receive these forms, defendant Matis should be granted summary judgment as to plaintiff's claim

16   that defendant retaliated against him by ignoring these requests for law library access.

17   *Alleged Denial to Paging*

18   Plaintiff alleges that defendant Matis denied his paging request in retaliation for filing the

19   grievance challenging the loss of his library clerk job.  The following facts regarding this claim

20   are undisputed.

21   On September 28, 2013, plaintiff submitted a paging request, asking that he be provided

22   with copies of three legal authorities.  (ECF No. 119-2 at 18.)  This was the second time plaintiff

23   had submitted such a request.  (Id. at 19.)  The first request had been returned with an oral

24   explanation provided as to why it was being denied.  (Id.)  Defendant Matis denied the second

25   request for the same reason as the first, namely that plaintiff did not qualify for paging pursuant to

26   Title 15.  (Id.; ECF No. 15 at 128.)

27   The parties dispute whether plaintiff qualified for paging.  In her declaration, defendant

28   Matis states that she denied plaintiff's paging requests because paging was for inmates who could

21

1  not physically access the law library for reasons such as prison lockdowns or modified programs,

2  neither of which were then present.  (ECF No. 102-7.)  In the opposition, plaintiff argues that

3  paging was not limited to inmates on lockdown or modified programs.  (ECF No. 119-2 at 19.)  In

4  support of this claim, plaintiff cites exhibits O and Q attached to the second amended complaint.

5  (Id.)  Defendant also cites exhibit Q as evidence that only inmates on lockdown or modified

6  programs were permitted accessing to paging.  (ECF No. 102-3 at 19.)

7       Exhibit Q is a copy of Cal. Code Regs. tit. 15, § 3123, titled "Access to Law Libraries."

8  (ECF No. 15 at 127.)  The undersigned quotes herein from the relevant section:

> (c) When unable to physically access the law library, an inmate may request access to legal material through delivery of those materials to the inmate by library staff.  This process is referred to as law library paging.  An inmate shall not be limited to law library paging for access to legal materials except under extraordinary circumstances including, but not limited to, the following:
>
> (1) The inmate is directly under a prison lockdown or modified program.
>
> (2) The inmate is under restricted movement due to his or her medical status.
>
> (3) The inmate has been suspended from physical access to the law library pending investigation of a serious rule violation.

17  Title 15, § 3123(c).

18       Plaintiff does not claim, and there is no evidence, that he was subject to any of the

19  circumstances listed above under which an inmate would have access to paging.

20       Plaintiff's Exhibit O is the memorandum containing the minutes from the August 31, 2013

21  C Facility Library IMAC Executive Committee Meeting.  (ECF No. 15 at 121-22.)  This meeting

22  occurred on August 31, 2013, and the minutes are signed by defendant Matis.  (Id.)  In  relevant

23  part, the minutes state,

> The Executive Committee asked about Paging.  Ms. Matis stated she didn't want to use the word "Paging" or "Cell Study," but could say the library staff is exploring and discussing being able to provide cases to GLU status inmates who were unable to physically access the library due to limited space, preponderance of PLU status inmates, etc.  She said tentatively, consideration was being given to allowing 3 cases at a time after an inmate had been unable to access the library for a period of roughly 21 days.  Ms. Matis stated that this access to cases would involve delivery of them via

22

1

2

the Institutional Mail service.  The Executive Committee requested that inmates on the law library subcommittee be allowed to make delivery of the cases versus using the mail.  Ms. Matis stated she would raise that issue with her boss, Mr. Wilson.

3

4

(Id.)

5

The memorandum quoted above indicates that as of August 31, 2013, defendant Matis and

6

the library staff were "exploring and discussing" being able to provide cases to GLU inmates who

7

had been unable to access the law library for 21 days.  There is no evidence that this proposed

8

policy had been implemented when plaintiff submitted his "paging" requests in September 2013.

9

In the second amended complaint, plaintiff alleges that while he was in the law library on

10

August 8, 2013, he overheard an unidentified inmate ask defendant Matis if he could get a case

11

printed out so that he could read it in his cell because GLU inmates were not being called to the

12

library.  (ECF No. 15 at 24.)  Plaintiff alleges that defendant Matis responded, "yes," but only if

13

the inmate had not had law library access in over 21 days.  (Id.)

14

The conversation plaintiff alleges overhearing between defendant Matis and the

15

unidentified inmate suggests that in August 2013 defendant Matis was providing cases to GLU

16

inmates pursuant to the proposed policy discussed in the August 31, 2013 memorandum quoted

17

above.  However, the undersigned cannot consider these allegations for the following reasons.

18

"To survive summary judgment, a party does not necessarily have to produce evidence in

19

a form that would be admissible at trial, as long as the party satisfies the requirements of Federal

20

Rules of Civil Procedure 56."  Block v. City of Los Angeles, 253 F.3d 410, 418–19 (9th Cir.

21

2001) (citing Celotex, 477 U.S. at 324).  The court's focus at summary judgment is not on the

22

form of the evidence submitted, but on whether its content would be admissible.  For example,

23

hearsay evidence attached to an affidavit may be considered at summary judgment if the out-of-

24

court declarant could present the evidence through direct, admissible testimony at trial.  Fraser v.

25

Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing Hughes v. United States, 953 F.2d 531, 543

26

(9th Cir. 1992) (because contents of diary were recitations of events within declarant's personal

27

knowledge, reliance on diary at summary judgment was permissible even if diary itself was

28

inadmissible at trial).

1   Plaintiff has not identified the inmate who allegedly had the conversation with defendant

2   Matis on August 8, 2013.  Without identification of this inmate, the undersigned cannot determine

3   whether inmate's testimony would be admissible at trial.  For this reason, the undersigned cannot

4   consider these hearsay allegations made in the second amended complaint in evaluating

5   defendant's summary judgment motion.

6   The undisputed evidence demonstrates that defendant Matis denied plaintiff's September

7   2013 paging requests because plaintiff did not meet the qualifications for paging, as set forth in

8   section 3123(c).  In late August 2013, defendant Matis and law library staff were considering a

9   "paging" policy for GLU inmates who had not received law library access for 21 days, for

10   reasons other than those set forth in section 3123(c).  However, there is no evidence that this

11   policy had been implemented at the time plaintiff submitted his requests.  Therefore, the evidence

12   demonstrates that defendant Matis did not act with a retaliatory motive when she denied

13   plaintiff's September 2013 paging requests.  Accordingly, defendant Matis should be granted

14   summary judgment as this claim.[5]

15   *Request for Law Library Access in January 2014 based on Evans v. Chavis*

16   Plaintiff alleges that on January 18, 2014, he submitted a PLU application for law library

17   access in order to submit a habeas petition within 60 days, as suggested by the Supreme Court in

18   Evans v. Chavis, 546 U.S. 189 (2006).[6]  (ECF No. 15 at 28.)  Plaintiff alleges that on January 21,

19   2014, defendant Matis denied this request in retaliation for his filing of the grievance challenging

20   the loss of his library clerk job.  (Id.)  Plaintiff alleges that defendant Matis had previously

21   granted inmate Leon's request for PLU status to file a habeas petition pursuant to Evans v.

22   Chavis.  (Id.)

23

24   [5]   Defendant states that plaintiff also alleges that he submitted a paging request on February 7,
     2014.  The undersigned cannot find this claim in the second amended complaint.

25

26   [6]   In Evans v. Chavis, the Supreme Court considered delays between the filing of state habeas
     petitions for purposes of calculating statutory tolling pursuant to 28 U.S.C. § 2244(d)(2).  In

27   Evans v. Chavis, the Supreme Court found that a gap of 30 to 60 days between state petitions is
     considered a "reasonable time" during which the statute of limitations is tolled.  Evans, 546 U.S.

28   at 210.

1    Plaintiff's and inmate Leon's requests for law library access pursuant to Evans v. Chavis

2    are attached as exhibits to the second amended complaint.  Inmate Leon submitted his request in

3    April 2013, which defendant Matis granted on May 10, 2013.  (Id. at 131.)  Plaintiff submitted his

4    request on January 18, 2014, in which he wrote that pursuant to Evans v. Chavis, he was

5    requesting PLU status for 60 days to prepare a habeas corpus petition. (Id.)  Defendant Matis

6    denied this request on January 21, 2014, writing "No statutory or court rule cited nor is there a

7    court ordered deadline."  (Id. at 129.)

8    Defendant Matis argues that she did not retaliate against plaintiff when she denied his

9    request for PLU status based on Evans v. Chavis.  Defendant Matis does not dispute that she

10    granted inmate Leon's request for PLU status pursuant to Evans v. Chavis, but denied the same

11    request made by plaintiff.  Defendant Matis argues that she denied plaintiff's request for PLU

12    status based on Evans v. Chavis because she was not authorized by her supervisor to grant the

13    request.  (Id. at 9-10.)  In her declaration defendant Matis states, in relevant part,

> 35.  Inmates had earlier been provided PLU status for 60 days based
> on Evans v. Chavis.  However, by the time Rodriguez submitted his
> PLU request, I had received direction from my supervisor that Title
> 15 clearly provided for only 30 days of PLU status prior to a
> deadline and that PLU status was not to be granted for longer
> periods of time based on an inmate's or a staff member's
> interpretation of a court case.  Attached hereto as Exhibit "O" is a
> true and correct copy of an email chain I received from my
> supervisor regarding Evans v. Chavis.  The email has been redacted
> to protect the privacy and safety of those involved. This record was
> received, made and kept in the ordinary course of my employment
> with the CDCR.

21    (Id. at 9-10.)

22    The undersigned has reviewed defendant's Exhibit O containing the email chain

23    referenced above.  (Id. at 46-49.)  These emails indicate that in May 2013, defendant had been

24    instructed to give inmates PLU status for 60 days based on requests made pursuant to Evans v.

25    Chavis.  (Id.)  However, in November 2013, defendant Matis had been instructed that requests for

26    60 days PLU status based on Evans v. Chavis were not to be granted.  (Id.)

27    Defendant has presented uncontroverted evidence that she denied plaintiff's January 2014

28    request for PLU status based on Evans v. Chavis in accordance with instructions from her

25

1   supervisor, and not based on a retaliatory motive.  Accordingly, defendant Matis should be

2   granted summary judgment as to this claim.

3          *Request for Copies in February 2014*

4          Plaintiff alleges that on February 20, 2014, he attended the law library to work on a

5   motion to recall the mandate to be filed in the Ninth Circuit.  (ECF No. 15 at 28.)  Plaintiff alleges

6   that when he asked defendant Matis for "copies," she responded, "Don't you see I'm busy."  (Id.)

7   Plaintiff alleges that because he did not get copies he was unable to meet the deadline for filing

8   his motion in the Ninth Circuit.  (Id. at 28-29.)  Plaintiff is claiming that defendant Matis denied

9   his request for copies in retaliation for his filing the grievance challenging the loss of his law

10  library clerk job.

11         Defendant Matis moves for summary judgment as to this claim on grounds that there is no

12  evidence that she took the adverse action alleged, i.e., refusing to make copies.  In her

13  declaration, defendant states that she has no recollection of the events of February 20, 2014, as

14  alleged in the second amended complaint.  (ECF No. 102-7 at 10.)  Defendant states that if

15  plaintiff had requested copies from her, she would have made sure that they were provided so

16  long as the documents he sought to have copies were permitted under regulations.  (Id.)

17         Defendant also argues, and plaintiff does not dispute, that plaintiff served the motion to

18  recall the mandate with the Ninth Circuit on February 20, 2014, i.e., the date plaintiff allegedly

19  requested the copies.  (ECF No. 119-2 at 23 (plaintiff's statement of undisputed facts); ECF No.

20  102-5 at 26 (Ninth Circuit docket).)  In his opposition, plaintiff argues that this argument ignores

21  the "obvious fact, that, regardless of how plaintiff managed to get it done, defendant Matis,

22  nevertheless, actively interfered with his litigation tactics."  (ECF No. 119- at 13.)

23         While plaintiff argues that he was able to obtain the necessary copies in spite of defendant

24  Matis's alleged refusal to make them, this argument ignores the undisputed fact that he filed his

25  motion to recall the mandate on February 20, 2013, i.e., the date he claims defendant Matis

26  allegedly refused to make the copies for him.  Therefore, plaintiff met the deadline for filing the

27  motion to recall the mandate, contrary to what is alleged in the second amended complaint.

28         Because plaintiff's claims regarding what occurred on February 20, 2014, are not

1    supported by the evidence, the undersigned finds that plaintiff has not met his burden of

2    demonstrating that defendant retaliated against him on that date by refusing to make copies.

3    Accordingly, defendant Matis should be granted summary judgment as to this claim.

4           D.  Qualified Immunity

5           Defendant moves for summary judgment based on qualified immunity.

6           "[Q]ualified immunity is an affirmative defense and ... the burden of pleading it rests with

7    the defendant."  Crawford-El v. Britton, 523 U.S. 574, 587 (1998).  Deciding qualified immunity

8    entails a two-step analysis. Once a court determines that a constitutional violation occurred the

9    court must then inquire whether the right violated was "clearly established" by asking whether a

10   reasonable officer could believe that his actions were lawful.   Oxborro v. City of Coalinga, 559

11   F.Supp.2d 1072, 1080 (E.D. 2008) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001).)  "In the

12   second step, the court must ask whether it would be clear to a reasonable officer that his conduct

13   was unlawful in the situation confronted. Although this inquiry is primarily a legal one, where the

14   reasonableness of the officer's belief that his conduct was lawful 'depends on the resolution of

15   disputed issues of fact ... summary judgment is not appropriate.'"  Id. (citing Wilkins v. City of

16   Oakland, 350 F.3d 949, 956 (9th Cir. 2003).)

17          Because the undersigned finds that defendant should be granted summary judgment as to

18   the merits of plaintiff's claims, no further discussion of qualified immunity is warranted.

19          Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for an extension of time

20   (ECF No. 116) is denied;

21          IT IS HEREBY RECOMMENDED that:

22          1.  Plaintiff's motion to stay (ECF No. 108), construed as a motion pursuant to Federal

23   Rule of Civil Procedure 56(d), be denied;

24          2.  Defendant's motion for summary judgment (ECF No. 102) be granted.

25          These findings and recommendations are submitted to the United States District Judge

26   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

27   after being served with these findings and recommendations, any party may file written

28   objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

2  objections shall be filed and served within fourteen days after service of the objections.  The

3  parties are advised that failure to file objections within the specified time may waive the right to

4  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5  Dated:  December 27, 2016

6

7  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

8

9  Rod1049.sj

   kc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28